**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KENNETH MARVIN WATFORD, | : | |
| | : | Civil Action No. 09-5271 (NLH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN ROBERT BALICKI, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Kenneth Marvin Watford
Cumberland County Department of Corrections
54 W. Broad Street
Bridgeton, NJ 08302

**HILLMAN**, District Judge

        Plaintiff Kenneth Marvin Watford, a pre-trial detainee

confined at Cumberland County Department of Corrections in

Bridgeton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u>

<u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his

constitutional rights.  Based on his affidavit of indigence and

the absence of three qualifying dismissals within 28 U.S.C.

§1915(g), the Court will grant Plaintiff's application to proceed

<u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the

Clerk of the Court to file the Complaint.

        At this time, the Court must review the Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I. <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is a pre-trial detainee. He alleges that on June 6, 2009, he was placed in pre-hearing detention until June 17, 2009, with no disciplinary hearing. Plaintiff alleges that while in pre-hearing detention he was deprived of his personal effects, stationery, personal hygiene materials, toothbrush, toothpaste, soap, washcloth, drinking cup, eating utensils. He alleges that he was deprived of laundry privileges, cell sanitation products, and running water (other than the toilet). He alleges that water was provided by an Igloo water cooler placed on the floor outside of the three lock-up cells so the prisoners had to reach outside the cells and slide the cooler to one another to drink water. Plaintiff alleges that the cells smelled of urine, while blotches of saliva and phlegm were all about the walls and toilets. Plaintiff alleges that he had no access to legal materials or aides. He alleges that this amounted to cruel and unusual punishment and violated his rights under the Due Process Clause of the Fourteenth Amendment. Plaintiff alleges that Defendant Lieutenant Sciore is in charge of the disciplinary hearings and

personally placed him in pre-hearing detention for 11 days
without any hearing.

Plaintiff alleges that on July 29, 2009, he was attacked and
injured by a fellow prisoner.  He suffered lacerations and a
fractured eye socket.  He alleges that he was taken to a medical
center outside of the jail and was later assessed a $215 co-pay
for medical services provided in connection with this incident.
Plaintiff challenges the assessment of this co-pay.

Plaintiff alleges that Warden Robert Balicki, Sgt. Wronyuk,
Captain Lampkin, and Lieutenant Sciore have failed to respond to
his administrative grievances.  Plaintiff further alleges that
Captain Lampkin is responsible for supervision of staff and
inmates.  He alleges that Sgt. Walter Wronyuk, a sergeant in
Internal Affairs, is in charge of investigations.

Plaintiff alleges that he wrote to Cumberland County
Prosecutor Ronald Cassella informing him of his desire to file
assault charges against James Royal for attacking him and
fracturing his eye socket.  Plaintiff alleges that Mr. Cassella
refused to assist him in prosecuting the matter.

Plaintiff names as defendants Acting Warden Robert Balicki,
Captain Kenneth Lampkin, Lieutenant Robert Sciore, Sergeant
Walter Wronyuik, the Cumberland County Department of Corrections,
the Cumberland County Prosecutor's Office, and Cumberland County
Prosecutor Ronald Cassela.  Plaintiff alleges that all defendants

are responsible for his injuries due to the authority vested in them for the protection of Cumberland County prisoners.  He alleges that each defendant failed to pursue a proper judicial review of the matter.  Plaintiff alleges that the Cumberland County Department of Corrections and defendants Robert Balicki, Kenneth Lampkin, Robert Sciore, and Walter Wronyuk are responsible for the alleged due process violations as they are responsible for overseeing the care, supervision, health and disciplinary process within the institution.

Plaintiff seeks monetary damages.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all

4

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").

5

Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

6

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of

7

the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat superior</u>.  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.</u>

New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the plaintiff's injury.

Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)). A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law." [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983. The first is where "the appropriate
> officer or entity promulgates a generally applicable
> statement of policy and the subsequent act complained
> of is simply an implementation of that policy." The
> second occurs where "no rule has been announced as
> policy but federal law has been violated by an act of
> the policymaker itself." Finally, a policy or custom
> may also exist where "the policymaker has failed to act
> affirmatively at all, [though] the need to take some
> action to control the agents of the government 'is so
> obvious, and the inadequacy of existing practice so
> likely to result in the violation of constitutional
> rights, that the policymaker can reasonably be said to
> have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or

her official capacity "generally represent[s] only another way of

pleading an action against an entity of which an officer is an

agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-

capacity action, ... a governmental entity is liable under § 1983

only when the entity itself is a 'moving force' behind the

deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV. <u>ANALYSIS</u>

A.  <u>Joinder</u>

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>      (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u>
>      (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law

12

> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be

liberally construed in the interest of convenience and judicial

economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).

However, the policy of liberal application of Rule 20 is not a

license to join unrelated claims and defendants in one lawsuit.

See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir.

2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v.

Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground

for dismissing an action.  Instead, a court faced with a

complaint improperly joining parties "may at any time, on just

terms, add or drop a party.  The court may also sever any claims

against a party."

Here, there is no single claim asserted against all

defendants that presents questions of law or fact common to all.

Accordingly, Plaintiff has not properly joined the defendants in

this action.  This Court will review the claims asserted to

determine whether certain claims and or parties should be dismissed.  <u>See</u> Fed.R.Civ.P. Rule 21.

B.   <u>Claims Against the Prosecutor and the Prosecutor's Office</u>

Plaintiff alleges that Cumberland County Prosecutor Ronald Cassela and the Cumberland County Prosecutor's Office are liable for failure to prosecute the prisoner who attacked him.[1]

However, "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973).  <u>See also</u> <u>Leeke v. Timmerman</u>, 454 U.S. 83, 85-87 (1981) (in general, a private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another).  Plaintiff has failed to state a claim against these defendants.

C.   <u>Claims for Failure to Respond to Grievances</u>

Plaintiff asserts that the defendants Warden Balicki, Sgt. Wronyuk , Captain Lampkin, and Lieutenant Sciore failed to respond to his grievances.  It is not clear what specific matters were grieved.

"'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'"  <u>Graw v. Fantasky</u>, 68 Fed.Appx.

---

[1] Plaintiff has alleged no facts suggesting that these defendants are in any manner involved in the other claims Plaintiff seeks to assert.

378, 2003 WL 21523251 (3d Cir. 2003) (unpubl.) (quoting unpubl. District Court opinion) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)). Cf. Burnside v. Moser, 138 Fed.Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process); Lewis v. Williams, 2006 WL 538546, *7 (D. Del. 2006) (failure to investigate a grievance does not raise a constitutional issue) (collecting cases). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions).

Plaintiff has failed to state a constitutional claim for failure to investigate or respond to his grievances.

D.   Claim for Confinement in Detention

Plaintiff alleges that Defendant Lt. Sciore twice placed him in pre-hearing detention without a hearing.  He refers, specifically, to an eleven-day period from June 6 to June 17, 2009.  He also alleges that conditions in the pre-hearing detention cells differed substantially from conditions elsewhere in the jail, especially in that they were unhygienic, lacked potable running water, and lacked personal hygiene items. Plaintiff also alleges that Defendants Robert Balicki, Kennth

15

Lampkin, Robert Sciore, Walter Wronyuk, and the Cumberland County
Department of Corrections "are all directly responsible for my
due process violations as they are all responsible for overseeing
the care, supervision, health and disciplinary process within the
confines of the Institution as prescribed under New Jersey Law.
Also, as it is the responsibility of each supervising staff
member to tour their respective housing units & document their
observations, they should be fully aware of the conditions of
living that every prisoner is forced to live under through their
own personal observation of said areas and detailed reports of
operations throughout the facility as well."

Pre-trial detainees and convicted but unsentenced prisoners
retain liberty interests firmly grounded in the Due Process
Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399
F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341
(3d Cir. 2000).  Analysis of whether such a detainee or
unsentenced prisoner has been deprived of liberty without due
process is governed by the standards set out by the Supreme Court
in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at
157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an

16

adjudication of guilt in accordance with due process of
law. ...

     Not every disability imposed during pretrial
detention amounts to "punishment" in the constitutional
sense, however.  Once the government has exercised its
conceded authority to detain a person pending trial, it
obviously is entitled to employ devices that are
calculated to effectuate this detention. ...

     A court must decide whether the disability is
imposed for the purpose of punishment or whether it is
but an incident of some other legitimate governmental
purpose.  Absent a showing of an expressed intent to
punish on the part of detention facility officials,
that determination generally will turn on "whether an
alternative purpose to which [the restriction] may
rationally be connected is assignable for it, and
whether it appears excessive in relation to the
alternative purpose assigned [to it]."  Thus, if a
particular condition or restriction of pretrial
detention is reasonably related to a legitimate
governmental objective, it does not, without more,
amount to "punishment."  Conversely, if a restriction
or condition is not reasonably related to a legitimate
goal--if it is arbitrary or purposeless--a court
permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees <u>qua</u>
detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

17

are not legitimate nonpunitive governmental objectives.  441 U.S.
at 539 n.20.  Nor are grossly exaggerated responses to genuine
security considerations.  Id. at 539 n.20, 561-62.

The Court of Appeals for the Third Circuit has applied the
Bell standard to allegations similar to those asserted here,
challenging placement in segregated housing as arbitrary and
restrictive.  See Stevenson v. Carroll, 495 F.3d 62 (3d Cir.
2007).

> Unconstitutional punishment typically includes
> both objective and subjective components.  As the
> Supreme Court explained in Wilson v. Seiter, 501 U.S.
> 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the
> objective component requires an inquiry into whether
> "the deprivation [was] sufficiently serious" and the
> subjective component asks whether "the officials
> act[ed] with a sufficiently culpable state of mind[.]"
> Id. at 298, 111 S.Ct. 2321.  The Supreme Court did not
> abandon this bipartite analysis in Bell, but rather
> allowed for an inference of mens rea whether the
> restriction is arbitrary or purposeless, or whether the
> restriction is excessive, even if it would accomplish a
> legitimate governmental objective.  See Bell, 441 U.S.
> at 538-39 & n.20, 99 S.Ct. 1861.
>
> ...
>
> In evaluating a pretrial detainee's claim of
> unconstitutional punishment, courts must examine the
> totality of the circumstances within the institution.
> ...  Appellants assert that, as compared to the
> conditions for the general prison population, housing
> in the SHU is significantly more restrictive.  the
> complaint draws specific, item-by-item comparisons
> between the restrictions in the SHU and those in the
> general prison population.  The allegations in the
> complaint raise an inference of impermissible
> punishment that precludes granting a motion to dismiss
> and may warrant further discovery.

Stevenson, 495 F.3d at 68-69 (footnote omitted).

18

Similarly, here, Plaintiff's allegations are sufficient to state a claim as against Defendant Lt. Sciore, the officer alleged to have placed him in pre-hearing detention.  However, Plaintiff has failed to allege any facts giving rise to an inference that any other named individual defendants acted with a culpable state of mind.  Moreover, Plaintiff has failed to allege any facts suggesting a policy or practice that would give rise to municipal liability on the part of the Cumberland County Department of Corrections.  Accordingly, the due process claim may proceed as against Defendant Lt. Sciore only.

E.    Claim Regarding Medical Co-Pay

Plaintiff challenges his assessment of a $215 medical co-pay for treatment of injuries sustained in the attack by a fellow prisoner.

No statutory or constitutional violation arises out of the deduction of nominal amounts from Plaintiff's institutional trust account for medical expenses.[2]  For example, pursuant to 18 U.S.C. § 4013(d), with certain limitations not raised by Plaintiff's allegations, a state or local government may assess and collect a reasonable fee from the trust fund account of a federal prisoner for health care services, provided the fee is

---

[2] The institutional account statement attached to Plaintiff's application for leave to proceed in forma pauperis shows numerous debits for commissary purchases and medical services.  The account statement also shows a final positive balance of $81.76.

19

authorized under state law.  Pursuant to N.J.S.A. § 30:7E-2, county governments in New Jersey may assess and collect such fees from prisoners confined or detained in county jails.

In addition, such co-pay policies are constitutionally permissible, under both the Eighth and Fourteenth Amendments, if they do not interfere with timely and effective treatment of serious medical needs.  See, e.g., Reynolds v. Wagner, 128 F.3d 166, 173-82 (3d Cir. 1997) ("There is, of course, no general constitutional right to free health care.").  As Plaintiff does not allege that he has been denied treatment because of an inability to pay, and his institutional account statement reveals the ability to pay nominal fees, he fails to state a claim based upon the assessment of a modest fee for medical care.

## V.   CONCLUSION

For the reasons set forth above, the due process claim may proceed as against Defendant Lt. Robert Sciore.  All other claims will be dismissed.  Because Plaintiff has stated a claim with respect only to this single claim against a single defendant, it is not necessary to dismiss any other claims or parties under the joinder rules.

Because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome certain deficiencies noted here, the Court will grant Plaintiff leave to

file an amended complaint.[3]  Any such amended complaint, however, must conform to the joinder rules.  To the extent Plaintiff seeks to assert claims that cannot properly be joined in this action, such claims must be asserted in a separate complaint.

An appropriate order follows.

At Camden, New Jersey                    /s/ NOEL L. HILLMAN
                                        Noel L. Hillman
                                        United States District Judge

Dated: April 30, 2010

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

21